TOWN OF CRYSTAL SPRINGS *v.* MORETON *et al.*

[95 South. 242. No. 22879.]

MUNICIPAL CORPORATIONS.  *Contestants of extension of limits of municipality have right to open and close case on appeal; instruction that, if territory proposed included within corporate limits necessary for some purpose other than revenue from taxation verdict should be against extension held, erroneous.*

In an appeal from an ordinance of a municipality extending its limits, the issue to be tried under section 3304, Code of 1906 (Hemingway's Code, section 5800), is whether the ordinance is reasonable or unreasonable, and the burden of proof is on the contestants, and this burden gives the contestants the right to open and close the case. In such trial it is error to instruct the jury for the contestants that, "Unless the jury believe from the evidence that the territory proposed to be included is necessary to be included in the corporate limits for some other purpose than taxation and revenue arising therefrom, then your verdict should be against the extension," because it places a greater burden than is required under that section.

Appeal from circuit court of Copiah county.

Hon. D. M. Miller, Judge.

Proceeding by the Town of Crystal Springs extending the corporate limits of said Town. Sam P. Moreton and others appealed to the circuit court, where there was a judgment against the proposed extension, and the Town appeals. Reversed and remanded.

*Wilson & Henley* and *W. B. Lockwood,* for appellant.

It is within the province of the supreme court to determine the reasonableness or unreasonableness of the ordinance. *Kraetzer Cured Lumber Co.* v. *The Town of Moorehead,* 118 Miss. 736; *Thomas et al.* v. *Town of Long Beach,* 111 Miss. 329. We assume the position that there are no very important contradictions in the evidence, and that even by resolving such conflicts as exist in favor of appellees, that it is manifest from the uncontroverted evidence that the ordinance is reasonable.

Benefits annexed territory would receive. If the ordinance be declared reasonable, parties living within the added territory would receive all the benefits of a town to-wit: (a) Better schools; (b) water and lights; (c) police protection; (d) better sanitary conditions; (e) fire protection; (f) lower insurance rates; (g) sidewalks and lighted streets. Verdict should have been directed for town of Crystal Springs.

Both the appellant and the appellees requested the court below to direct a verdict in their respective favors. In 38 Cyc. 1582, the following rule is stated as being definitely settled by the supreme court of the United States: "Where both parties ask for a directed verdict and do nothing more, they thereby assume the facts to be undisputed, they request the court to find the facts, and they are concluded by the finding made by the court upon which the resulting instruction of law is given.

"The general rule is that a request by both parties for the direction of a verdict amounts to a submission of the whole case to the court and its decision upon the facts has the same effect as the verdict of a jury, and will not be disturbed when supported by any substantial evidence."

The courts are not in entire harmony in regard to this question and we do not think our court has expressly decided the same but regardless of this, the fact that both parties requested a binding instruction shows conclusively that each party recognized that there were no very material contradictions in the evidence as in event the testimony in regard to material issue was conflicting neither party would be entitled to a peremptory instruction.

We respectfully submit to the court that when this case is considered in the light of *Forbes et al.* v. *The City of Meridian,* 86 Miss. 245, which is the leading case on this question, that this ordinance is reasonable and the trial judge erred in refusing to direct a verdict for the town of Crystal Springs.

The town of Crystal Springs was entitled to the rights of plaintiff in trial before the circuit court. Upon appeal to the circuit court from the judgment of the municipal judge the trial is *de novo.* *Yerger* v. *The Town of Greenwood,* 77 Miss. 378.

Thus, the court erred in granting to the appellants a very material right "the right to open and conclude, this in a jury trial is of prime importance." The right to open is important. It enables the party to give direction to the case, very often to choose the ground on which the battle is to be fought and the right to conclude is more important still. *Buchana* v. *McDonal,* 40 Georgia 286.

Instruction No. 8 for appellees placed the burden of proof on the town of Crystal Springs and required too high a degree of proof.

This instruction reads as follows:

"The court instructs the jury for the plaintiffs, that municipalities are not created for the purpose solely of raising revenue, and the power of extending the corporate

limits granted to a municipality is not to be resorted to solely for the purpose of increasing the income of the municipality, but in order that the benefits incident to city government may be extended to those residents in the territory adjacent to the municipality and included in the extension; and further, that the muncipality by extending its police government, its sanitary and its more adequate fire protection and other municipal benefits thereby conserves the best interest of the inhabitants within its boundaries, and also to give to those living in its territory included in the extension more efficient protection against devastation by fire and by the enforcement of necessary sanitary regulations, to the public health, decrease the danger of disease and pestilence. That these are the paramount circumstances; and incidental to these the citizens included in the extension are entitled to share in common with the other inhabitants of the municipality the convenience of sidewalks and lighted streets; fire protection and all the other advantages of municipal life; and unless the jury believe from the evidence that the territory proposed to be included is necessary to be included in the corporate limits for some other purpose than taxation and revenue arising therefrom, then your verdict should be against the extension."

This instruction in effect told the jury that unless they believe from the evidence that the territory proposed to be included is necessary to be included for some other purpose than taxation and revenue arising therefrom. In order that the benefits of the city government may be extended to those residents in the territory adjacent to the municipality and included in the extension, etc. This instruction tells the jury that unless they believe it is necessary but not merely desirable or reasonable, to extend municipal benefits to the extension, and further tells the jury that unless they believe it is necessary and not merely desirable or reasonable to extend the police regulation to this territory and unless they believe it is necessary to have sanitary regulations in this territory instead of being mere-

ly desirable or reasonable to have such benefits and unless it is necessary and and not merely desirable or reasonable that the citizens included in the extension should share in common with the other inhabitants, the conveniences of sidewalks and lighted streets, they should find against the extension.

According to the statute, section 4800 of Hemingway's Code, the reasonableness or unreasonableness of the ordinance is the test and not the necessity or the lack of necessity of extending certain benefits. Citizens living in the suburbs of the town might be able to get along with oil lights, obtain their water from some private source, send their children to rural schools, do without police protection or sanitary regulations or the convenience of sidewalks or other municipal advantages. Yet all of these privileges and advantages might be desirable, and when considered in a whole, an ordinance annexing such territory to an adjacent town might be entirely reasonable although such advantages and privileges might not be absolutely necessary. Thus too high a degree of proof was required of the defendant in the lower court; see *Gentry* v. *Gulf & Ship Island R. R. Co.*, 109 Miss. 66; *Stevenson* v. *Yazoo and Miss. Valley R. R. Co.*, 112 Miss. 899; *Mardis* v. *Yazoo & Miss. Valley R. R. Co.*, 115 Miss. 734.

This instruction was also erroneous because it placed the burden of proof upon the town of Crystal Springs. Where a town has voted for annexation, the burden is upon the remonstrants to show sufficient cause against it. (See Cyc. 28; page 206.)

The case of *Hines, Director General of R. R.* v. *McCullers*, 121 Miss. 666, was reversed upon instructions very similar to this case. See instruction No. 20 and 18 and the court's opinion in this case.

Instruction No. 5 for complaining parties was incorrect. This instruction is as follows: "The court instructs the jury for the plaintiffs, that in considering the question of the reasonableness or unreasonableness of the extension of the corporate limits of the town of Crystal Springs, if you

should believe that the main or sole object in extending the corporate limits of the town is for the purpose of taxing the added territory and obtaining revenue, then your verdict should be against the extension."

In the case of *Forbes* v. *The City of Meridian,* the court refused to grant an instruction as follows: "The court charges the jury that if they believe from the evidence any of the territory within the proposed extension would not be benefitted by being included in the city, then the ordinance is unreasonable and the jury will find for the plaintiffs."

And our supreme court sustained the action of the trial judge in refusing this instruction in the following language: "The instructions refused the appellants were incorrect either because they singled out and segregated special circumstances assumed to have operated upon the municipal authorities, and thus presented only a partial view of the ordinance, or because they contravened the statute which forbids an instruction upon the weight of evidence. In either view the action of the accomplished trial judge in refusing them was correct." We therefore insist that this instruction is erroneous and that instruction No. 8 is also erroneous for this reason in addition to the foregoing reasons.

We respectfully submit that the court should reverse the verdict of the lower court and enter judgment in the supreme court for the appellant, the town of Crystal Springs.

*Myron S. McNeil,* for appellee.

We desire to direct the court's attention to two propositions, either of which should control the decision of the court in this case. First: At least nine-tenths of the lands covered by the proposed extension are agricultural lands and are not needed for town purposes, and therefore it is not reasonable and proper to include them in the proposed extension and tax them for municipal purposes.

Second: We insist that because of the fact that the proposed extension embraces a large amount of land which is already in the Old Crystal Springs Consolidated School District which district was organized previous to the proposed extension, that the town of Crystal Springs cannot extend its corporate limits so as to encroach upon this territory under the present *status* of the law. But if the court should hold that it is possible for the town to do so, it would involve the separate school district and the town in hopeless confusion, and the extension of the corporate limits under these circumstances would result in such an injustice to the persons living in the added territory that the court would be compelled to decide that an extension of the corporate limits would be unreasonable.

Lands embraced in the added territory farming lands. From the foregoing testimony, as well as from the testimony of every other witness who testifed in the case, it can safely be estimated that all of the lands embodied in the proposed extension are used for agricultural purposes, with the exception of perhaps twenty-five or thirty acres on the south side of the town, including what is known as the Osborne addition where the negro village known as Freedmantown is located.

Conceding this to be true, what is the rule with reference to extending the limits of municipalities so as to include agricultural lands? McQuillin on Municipal Corporations, page 618, lays down these principles: "The conditions under which the municipal limits may be extended and territory annexed and the nature of such territory are well outlined in general terms in an Arkansas case, which is usually followed."

That case declares that municipal limits may be extended to take in contiguous lands: (1) When they are platted and held for sale or used as town lots. (2) Whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner. (3) When they furnish the abode for a densely settled community or repre-

sent the actual growth of the town beyond its legal boundaries. (4) When they are needed for any proper urban purpose, as for the extension of streets or sewers, gas or water system, or to supply places for the abode or business or resident or for the extension of needed police regulations. (5) When they are valuable by reason of their adaptability for prospective town purposes; but the mere fact that their value is enhanced by reason of their nearness to the corporation, would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town uses.

But municipal limits should not be extended to take in contiguous lands: (1) When they are used only for purposes of agriculture or horticulture and are valuable on account of such use. (2) When they are vacant and do not derive special value from their adaptability for urban use, although their value may be enhanced by reason of their nearness to the city."

These principles are taken from the case of *Vestal* v. *Little Rock*, 54 L. R. A. 778. See also the exhaustive note found in 11 L. R. A. *Fletcher* v. *Oliver*, 25 Ark. 289; *Cary* v. *Pekin*, 88 Ill. 154; *Martin* v. *Dix*, 52 Miss. 53; *Washburn* v. *Oshkosh*, 60 Wis. 453; *Martin* v. *Dix*, 52 Miss. 53; *Giboney* v. *Cape Girardeau*, 58 Mo. 141; *Santa Rosa* v. *Coulter*, 58 Cal. 537; *Washburn* v. *Oshkosh*, 60 Wis. 453; *Turner* v. *Althaux*, 6 Neb. 54; *Covington* v. *Southegate*, 15 B. Mon. 191; *Morford* v. *Unger*, 8 Iowa, 82; *Bradshaw* v. *Omaha*, 1 Neb. 16; *Prince George County Comrs.* v. *Blandensburg*, 51 Md. 465; *New Orleans* v. *Michhound*, 10 La. Ann. 763; 2 Dill. Mun. Corp., sec. 795, and note; *People* v. *Bennett*, 29 Mich. 451, 18 Am. Rep., 111; Borough of West Philadelphia, 5 Watts & S. 281; *Kelly* v. *Meeks*, 87 Me. 396.

So we insist that under the facts it cannot be said that the territory included in the proposed extension has been platted and is now held for sale or use as town lots. Under the decision cited by counsel for appellant of *Forbes* v. *City of Meridian*, 86 Miss. 243, if the proposed extension had been made in such a way as to have only included the

negro village, this argument would have been more convincing and effective; but the fact that one small settlement on one side of the town needs police protection or sanitary regulation, or furnishes the abode of a densely settled community, would not justify the town authorities in bringing in seven or eight hundred acres around the town where this condition did not prevail. *Forbes* v. *City of Meridian,* 86 Miss. 252.

(4) and (5). It cannot be said that they are needed for any proper urban purpose, as for the extension of streets, gas or water system; nor can it be insisted that they are valuable by reason of their adaptability for prospective town purposes, especially in view of the fact that there is open in Crystal Springs within the old corporate limits at this time at least two hundred acres of land being cultivated in truck farms. The evidence does not disclose that new enterprises are seeking to locate there; manufacturing industries are not calling upon the town for space and the town proper has passed over a period of more than ten years showing no increase of population.

But counsel on page 8 of their brief says: "If the ordinance be declared reasonable parties living within the added territory would receive all the benefits of a town, to-wit: (a) Better schools: (b) water and lights; (c) police protection; (d) better sanitary conditions; (e) fire protection; (f) sidewalks and lighted streets."

(a) Better Schools: With reference to the question of better schools we will demonstrate to the court that the pupils living within the proposed extension under the law will not become pupils at the Crystal Springs School, but will still be retained in the Old Crystal Springs Consolidated School District.

So to say to these truck farmers who are included within this proposed extension that we expect to give you lights and water, streets and sidewalks, is absurd, in view of the fact that the town of Crystal Springs as it now stands is under an indebtedness of approximately one hundred thousand dollars, and in view of the further fact that they

have failed and been unable to give the people a living within the old lines, the benefits they claim they will be able to extend to the people who are included in the proposed extension, is absurd.

### Reply to Appellant's Brief.

The contention that the town of Crystal Springs was entitled to the rights of plaintiff in the trial before the circuit court, is without merit. The burden is always upon the person who assails the legality of the ordinance. "Where a town has voted for annexation, the burden is upon the remonstrants to show sufficient cause against it." 28 Cyc. 206; *Dodson* v. *Fort Smith*, 33 Ark. 508.

The criticism of instruction No. 8, is without merit. This instruction, after stating fully the grounds upon which a municipality may extend its corporate limits, says: "And unless the jury believe from the evidence that the territory proposed to be included is necessary to be included in the corporate limits for some other purpose than taxation and revenue arising therefrom, then your verdict should be against the extension."

We insist that this is the law as announced by this court. In the case of *Forbes* v. *City of Meridian*, 86 Miss. 243. In other words, the instruction tells the jury that unless the proposed territory is necessary to be included for some other reasons as fully set forth in the instruction, than taxation and revenue arising therefrom, then the ordinance is unreasonable.

In connection with the criticism offered with reference to these instructions, we respectfully call the court's attention to the liberality and latitude given the appellant in the thirteen instructions allowed to it. We earnestly insist that if error was committed by the trial court in this case it was committed by the court in the refusal to the appellee of the peremptory instruction, and this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

On May 5, 1921, the mayor and board of aldermen of the town of Crystal Springs, Miss., passed an ordinance extending the corporate limits of the said town; an election was ordered resulting in a vote in favor of the extension. The appellee Moreton and others living within the territory proposed to be included filed an appeal to the circuit court, where the case was tried, resulting in a judgment against the proposed extension. When the case was called for trial the town of Crystal Springs, through its attorney, tendered to the complainant parties an issue, to-wit, "that the extension of the corporate limits as contained in the ordinance complained of is reasonable," and claimed the right of plaintiff on said issue. The complaining parties or protestants declined to accept the issue, but tendered an issue themselves that the ordinance was unreasonable. The court held that the protestants were plaintiffs, and the cause went to trial on that theory. The protestants or plaintiffs offered much evidence upon the character of the territory proposed to be added to the town of Crystal Springs, the number of people living therein, and concerning the territorial limits of the town as already existing, its situation and condition.

It appears that the town of Crystal Springs without the added territory was a mile square, measuring one-half mile each way from the depot. The territory proposed to be added extends the corporate limits approximately one-quarter of a mile each way from the boundary of the old corporate lines, with the exception that on the northwest the extension is less than one-quarter of a mile, and on the southeast the extension is increased beyond the one-quarter of a mile about as much as it lacked being a quarter of a mile on the northwest, resulting in making the town approximately four square miles of territory.

There were something over six hundred people living in the proposed territory to be added, of which more than one-half lived in a negro settlement known as "Freedman's

Town" lying southeast of the corporate limits. The proof shows that between 1910 and 1920 there was but little growth in the town of Crystal Springs proper, and that the population actually declined in the early part of that period. But it shows that at the time of the proposed extension the town was building rapidly. The failure of growth and the loss of the population in the early part of the decennial period between the censuses was occasioned by the boll weevil situation in the state; but the town had organized a truck growing business in the territory surrounding it, and had become noted as a truck and vegetable point. Many of the people living in the proposed extension were engaged in truck farming, having a small acreage. Some of the people living in the proposed addition did business in Crystal Springs, living outside the limits of the town, and others worked in Crystal Springs at various industries, living outside the old corporate limits. There was proof showing that vacant property within the corporate limits was hard to obtain for building purposes, and that prices were very high. It is also shown that in Freedman's Town there were frequent disturbances, and that the town had no control over the police or sanitary conditions therein. It was also shown that Crystal Springs had improved its fire department, and had waterworks which it owned, and from its plugs or stations with its fire hose it could reach property at a considerable distance over the boundary line. It was further shown that Crystal Springs has fine public schools, and that the levy for supporting the schools was less than the levy outside of the corporate limits, and that the schools ran longer, had better facilities, and had the privilege of entering its graduates in all colleges without examination. It was also shown that the proposed extension would cheapen insurance in the territory proposed to be added. There is also proof to show that some parts of the territory proposed to be added were hilly and unsuitable for residences, that other parts were low, and contained practically no population. Other parts contained more or less thickly populated territory, and on

account of the truck-growing business the country general-
ly around about was well settled, being cut up into small
farms as a rule.

The appellants contend that they were entitled to open
and close the case before the jury, and that the denial of
this right was prejudicial to them. We think that in such
contests the burden of proof would be upon the parties
contesting the extension. When the town passed its ordi-
nance proposing the extension, the presumption should be
indulged that the extension was reasonable and proper.
Those who contest the right to so extend ought to have the
burden of proving that the ordinance is unreasonable, and
the burden of proof gives the right to open and close the
case. It is difficult, however, to see how the appellant
could complain because the ruling was favorable to it, as
it would prevail under the rule adopted unless the other
parties made out their proof to the reasonable satisfaction
of the jury. In the trial the court gave instruction No. 8,
reading as follows:

"The court instructs the jury for the plaintiffs that mu-
nicipalities are not created for the purpose solely of rais-
ing revenue, and the power of extending the corporate
limits granted to a municipality is not to be resorted to
solely for the purpose of increasing the income of the mu-
nicipality, but in order that the benefits incident to city
government may be extended to those residents in the ter-
ritory adjacent to the municipality and included in the
extension; and, further, that the municipality by extend-
ing its police government, its sanitary and its more ade-
quate fire protection, and other municipal benefits, thereby
conserves the best interests of the inhabitants within its
boundaries, and also to give to those living in its territory
included in the extension more efficient protection against
devastation by fire, and by the enforcement of necessary
sanitary regulations to the public health decrease the dan-
ger of disease and pestilence; that these are the paramount
circumstances; and, incidental to these, the citizens in-
cluded in the extension are entitled to share in common

with the other inhabitants of the municipality the conveniences of sidewalks and lighted streets, fire protection, and all the other advantages of municipal life; and, unless the jury believe from the evidence that the territory proposed to be included is necessary to be included in the corporate limits for some other purpose than taxation and revenue arising therefrom, then your verdict should be against the extension."

The giving of this instruction to the appellees is assigned for error, the complaint being that the latter part of the instruction, to wit, "and unless the jury believe from the evidence that the territory proposed to be included is necessary to be included in the corporate limits for some other purpose than taxation and revenue arising therefrom, then your verdict should be against the extension," was erroneous, and placed too high a test upon the question at issue. Under section 3303, Code of 1906 (section 5799, Hemingway's Code), an appeal from an ordinance is provided. Under section 3304, Code of 1906 (section 5800, Hemingway's Code), it is provided that in the circuit court the issue shall be made up and tried, and the question shall be whether the proposed consolidation, extension, or contraction of the municipality or municipalities be or be not reasonable. The test is whether the ordinance is reasonable, and not whether it is necessary. Of course there is a considerable margin of difference between reasonable and necessary. Most extensions would be prevented if necessity be the test. See *Forbes* v. *City of Meridian,* 86 Miss. 243, 38 So. 676, where the question is discussed as to the test of reasonableness in such cases.

We think that it was error to grant the instruction complained of, and the judgment will be reversed, and the cause remanded.

*Reversed and remanded.*